IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D<span>ANIEL</span> G<span>ILYEAT</span>,

        Plaintiff,

v.                                                                      Case No. 13-2496-JTM

O<span>FFICER</span> C.C. M<span>ORALES</span>, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on defendants Officer C.C. Morales, Officer D.E. Sachen, Sergeant K.A. Hill ("Sergeant Hill"), and the Unified Government of Wyandotte County's ("Unified Government") Motion for Summary Judgment (Dkt. 53). This case arises out of the protective removal of plaintiff's children from his home without a warrant. Plaintiff, acting pro se, filed a twelve-count complaint against defendants. (Dkt. 1). Defendants were granted partial judgment on August 6, 2014. (Dkt. 39). The only remaining claims are plaintiff's Counts I and III against Sergeant Hill, Morales, and Sachen in their individual capacities and against the Unified Government. Defendants seek summary judgment on all remaining claims.

### I. Undisputed Facts

Defendants Morales, Sachen, and Sergeant Hill are officers for the Kansas City, Kansas Police Department ("KCKPD"). Plaintiff has four minor children with his ex-wife, Maureen Gilyeat: daughters ACG and VRG, and sons DLRG and NAG. On

1

November 18, 2012, plaintiff had residential custody of the four children, who lived with him and his current wife. On the evening of Friday, November 16, 2012, KCKPD officer Patrick O'Neill was dispatched to Shawnee Mission Medical Center in Overland Park, Kansas, on a report of child abuse concerning a thirteen-year old female, VRG. At the hospital, O'Neill observed several red marks on VRG's inner thigh. He spoke with Maureen, who alleged that, on November 12, 2012, plaintiff told VRG to pull down her pants, then beat her on her backside thirteen times with a belt. Maureen also told O'Neill that VRG has autism, epilepsy, and the mental capacity of a six-year-old. O'Neill spoke with VRG's sister, ACG, who told him that on November 12, 2012, she saw plaintiff pull VRG into a bedroom by her hair and yell at her, then heard plaintiff strike VRG twelve times.

After O'Neill's visit to the hospital, he reported his findings to Sergeant Hill. Based on O'Neill's report, Sergeant Hill determined that there was probable cause to believe that plaintiff had abused VRG. Sergeant Hill then spoke with Captain Dustin Dungan, a night detective, about O'Neill's report. They discussed placing VRG and ACG in protective custody, but decided that the children were not in immediate danger because they had returned home with Maureen.

On the evening of November 18, 2012, plaintiff and Maureen met at the McDonald's at 75th and State Avenue in Kansas City, Kansas, to discuss the children. Maureen would not allow the children to return home with plaintiff. Officers were dispatched to the scene, and Maureen told them she had recently made a child abuse

report against plaintiff. The officers were unable to locate the abuse report and allowed the girls to return home with plaintiff.

Later that evening, Maureen called dispatch and requested that officers go to plaintiff's house to check on the girls' welfare. Shortly after Maureen's call, Sergeant Hill learned that officers had allowed the girls to return home with plaintiff because they could not find Maureen's abuse report. Morales and Sachen were dispatched to plaintiff's house to perform the welfare check. While Sachen was en route to plaintiff's house, Sergeant Hill told him to take VRG and ACG into protective custody if he contacted them in plaintiff's home. On arrival at the house, Morales also spoke with Sergeant Hill, who advised him that she and Captain Dugan were both aware of the abuse report filed against plaintiff.

Morales and Sachen approached the house, and plaintiff answered the door. Morales and Sachen told plaintiff that they were there to check on ACG and VRG. Plaintiff let the officers in the house. Morales and Sachen encountered ACG and VRG, and both said they were fine. Morales notified Sergeant Hill by phone that ACG and VRG had been encountered; she told him to take them into protective custody. The officers informed plaintiff that ACG and VRG would be placed in protective custody in the Juvenile Intake and Assessment Center ("JIAC"). Plaintiff objected, and asked why only two of the four children were being taken. Morales called Sergeant Hill and asked her about the other two children. Sergeant Hill was unaware that Maureen and plaintiff had other children. She told Morales to place all four children in protective custody. Morales and Sachen then escorted the four children from the residence to place them in

JIAC until a hearing could be scheduled the following Monday. The children were returned to plaintiff's custody on November 20, 2012.

## II. Summary Judgment Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "[A] movant that will not bear the burden of persuasion at trial" need only "point[] out a lack of evidence for the nonmovant on an essential element of the nonmovant's claim" to succeed on summary judgment. *Id.* at 851.

The party resisting summary judgment may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at

249–50. Once the moving party has carried its burden under Rule 56, the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).

### A. Plaintiff's Claims on Behalf of His Children

Plaintiff alleges Fourth Amendment violations on behalf his minor children for unreasonable search and seizure. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). "Undoubtedly, parent may assert their children's Fourth Amendment rights *on behalf of* their children." *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997). To do so however, the children must be named as plaintiffs. *Id.* (parent failed to demonstrate violation of children's Fourth Amendment rights because they were not named in the complaint). Here, plaintiff's children are not named plaintiffs; he therefore cannot prove a violation of their Fourth Amendment rights.

In any event, a pro se parent cannot represent his children in federal court for constitutional claims. *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). "In this circuit, we have held 'that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.'" *Adams ex re. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011) (quoting *Meeker*, 782 F.2d at 154). The purpose of this rule is to "protect the interests of the minor

5

party; in addition, it jealously guards the judiciary's authority to govern those who practice in courtrooms." *Id.* (quoting *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010)). Plaintiff is acting pro se. Even if he had standing to bring the claims on his children's behalf, he could not bring them pro se.

Therefore, plaintiff fails to prove a violation of his children's Fourth Amendment rights. Defendants are entitled to qualified immunity on the unreasonable seizure claim.

***B. Summary Judgment on Qualified Immunity For Sergeant Hill, Morales, and Sachen***

Defendants argue that they are entitled to summary judgment based on qualified immunity, which requires the court to use an atypical summary judgment analysis. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant[s] violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

The court must first decide "whether the facts that a plaintiff has alleged (see FED. R. CIV. P. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court must evaluate whether a constitutional right was violated by considering the facts alleged "in the light most favorable to the party asserting the injury." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* "Qualified immunity is applicable unless the official's conduct violated a clearly

established constitutional right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If the court determines that no constitutional violation occurred, then it need not address the "clearly established" prong. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1322 (10th Cir. 2009).

The court has discretion to address the two prongs in any order. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal citation omitted).

Here, plaintiff alleges a Fourteenth Amendment procedural due process violation and a Fourth Amendment unreasonable seizure violation. As discussed above, he cannot prevail on the unreasonable seizure Fourth Amendment claim on his children's behalf. However, the court must liberally construe plaintiff's pro se complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Count III alleges unreasonable seizure of the children, but also asserts generally that plaintiff's own Fourth Amendment rights were violated. (Dkt. 1, at 18). Plaintiff also argues that the search of his home whereby the children were removed was unreasonable. (Dkt. 59). Accordingly, the court liberally construes Count III as including a Fourth Amendment claim for unreasonable search of plaintiff's home on the night the children were removed. Therefore, the court addresses qualified immunity on claims of procedural due process and unreasonable search in turn.

7

1. Qualified Immunity for Fourteenth Amendment Procedural Due Process

"Under the Fourteenth Amendment to the United States Constitution, parents have a protected liberty interest in the care, custody and control of their children." *Gomes v. Wood*, 451 F.3d 1122, 1127 (10th Cir. 2006) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "As a result, state officials may not remove children from the home, through either temporary seizures or the permanent termination of parental rights, without providing due process of law." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)).

States themselves have a *parens patriae* interest in protecting children's welfare. *Santosky*, 455 U.S. at 766. Such state interests include "a traditional and transcendent interest in protecting children from abuse." *Gomes*, 451 F.3d at 1128 (quotations and citations omitted). Due process requires that a state remove children from the home only after "parents receive prior notice and a hearing, except in 'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* (quoting *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir. 1989)). "These extraordinary situations include emergency circumstances which pose an immediate threat to the safety of a child. However, the mere possibility of danger is not enough to justify removal without appropriate due process." *Id.* (quotation and citation omitted). Pre-hearing removal from the home is justified where state officials have "'evidence giving rise to a reasonable and articulable suspicion that the child has been abused or is in imminent peril of abuse.'" *Arredondo v. Locklear*, 462 F.3d 1292, 1298 (10th Cir. 2006) (quoting *Gomes*, 451 F.3d at 1129).

"[E]ven when such a pre-hearing removal is justified, the state must act promptly to provide a post-removal hearing." *Gomes*, 451 F.3d at 1128; *see e.g. Campbell v. Burt*, 141 F.3d 927, 939 (10th Cir. 1998) (seven-day delay in post-removal judicial review did not violate due process rights). The children were removed on November 18, 2012. Plaintiff's post-removal hearing on November 21, 2012, was prompt. At issue here is whether the pre-hearing removal was justified.

*a. Sergeant Hill Did Not Violate Plaintiff's Due Process Rights*

At the time Morales and Sachen arrived at plaintiff's residence, Sergeant Hill was aware of the following, based on O'Neill's report. A child abuse report had been filed against plaintiff for beating VRG with a belt. VRG, a thirteen year-old with autism, was at the hospital with red marks and bruising on her upper inner thigh, near her genitals. VRG's mother and sibling, ACG, verified that the injuries occurred while VRG was at plaintiff's house when he dragged her by the hair into a bedroom and beat her with a belt. VRG and ACG were daughters of plaintiff and Maureen and both were likely at plaintiff's house again, less than a week after the alleged abuse occurred.

O'Neill's report of physical harm and the two corroborating reports by ACG and Maureen provided Sergeant Hill with reasonable suspicion that plaintiff had abused VRG. The evidence indicated that VRG was dragged by her hair and struck with a belt with enough force that marks were visible four days later at the hospital. The proximity of the marks to VRG's genitals raises suspicion that the blows were intended to harm her. Evidence that the incident may have been fueled by plaintiff's anger raises suspicion that the incident stemmed from an outburst or volatile behavioral tendencies

9

of the parent. Further, an abuse report had been filed against plaintiff. The evidence Sergeant Hill had reasonably led her to suspect that VRG had been abused on November 12, 2012.

An abused child returning to the abusive parent only a few days after a reported incident of abuse provides reasonable suspicion that the child is in imminent danger of abuse. There were no indications of significant changes in the recently abusive situation at the home. If plaintiff had recently abused her, he could easily do it again at any time and without notice – especially if anger factored into in the abusive conduct. It was reasonable to suspect, based on the evidence presented to Sergeant Hill, that VRG was in imminent danger of abuse if she was at plaintiff's residence. Thus, Sergeant Hill had reasonable and articulable suspicion sufficient to justify the removal of VRG from plaintiff's home without a hearing.

Further, it is reasonable to suspect that, if VRG – one of the older children in the household – was being abused, other minor siblings in the abusive home are in imminent danger of similar abuse. Sergeant Hill thus had reasonable suspicion to remove any children from the home without a hearing and did not violate plaintiff's constitutional due process rights.

*b. Morales and Sachen Did Not Violate Plaintiff's Due Process Rights*

Morales and Sachen both knew that an abuse report had recently been filed against plaintiff involving one of his and Maureen's daughters at the time they approached plaintiff's front door. Sergeant Hill ordered them to remove VRG and ACG if encountered during the wellness check because of her suspicion of imminent abuse.

10

Sergeant Hill's report and orders to Morales and Sachen were evidence giving rise to a reasonable suspicion that VRG had been abused and that she and the other children were in imminent danger of abuse.

Further, where an officer issuing orders must have reasonable suspicion, officers acting under those orders are "not required to have personal knowledge of the evidence creating the reasonable suspicion." *United States v. Hensley*, 469 U.S. 221, 231 (1985) (evaluating reasonable suspicion supporting an investigatory stop). Officers acting under orders may rest their reasonable suspicion on the information provided by their fellow officer. *Id.* Thus, Sergeant Hill's reasonable suspicion was sufficient to support Morales and Sachen's reasonable suspicion because they were acting in good faith on her orders.

Morales and Sachen did not violate plaintiff's due process rights because they had reasonable suspicion that children in plaintiff's home had been abused or were in imminent danger of abuse.

2. Qualified Immunity for Fourth Amendment Warrantless Search

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v United States*, 389 U.S. 347, 357 (1967)). "It is . . . well settled that one of the specifically established exceptions to the requirements of both warrant and probable cause is a search that is conducted pursuant to consent." *Davis v. United States*, 328 U.S. 582, 593-94 (1946). "It is clear that

11

the scope of a consent search is limited by the breadth of the consent given." *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990). The court must determine what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *United States v. Wacker*, 72 F.3d 1453, 1470 (10th Cir. 1995). The court must view the evidence in a light most favorable to the government to determine from the totality of the circumstances "'whether a search remains within the boundaries of the consent' given." *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996) (quoting *Pena*, 920 F.2d at 1514).

Here, Morales and Sachen said they wanted to enter his home to check on the children's welfare, and plaintiff allowed them in. Plaintiff knew an abuse report had been filed against him regarding VRG, and that the officers wanted to search in connection with suspected abuse. A reasonable person would understand the exchange, under the circumstances, to mean that the officers wanted to search the house for children who the officers thought may be in danger and that plaintiff consented to the same.

Plaintiff argues that he did not consent to the search because he did not know that the officers would take the children. However, as addressed above, the seizure of the children implicates *their* Fourth Amendment rights – not plaintiff's. Further, plaintiff's interests in custody of the children are secured by his Fourteenth Amendment rights. Here, the objectively reasonable understanding that the officers wanted to search the house for the children is sufficient to support the consent search. Plaintiff's subjective understanding of the consequence of the search to which he had consented

12

has no bearing on the objective reasonableness of the consent to conduct the search. His Fourth Amendment rights were not violated because he consented to a search of his home for children who may be in danger of abuse.

## C. Summary Judgment for Unified Government

"[None] of our cases authorize[] the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1322 (10th Cir. 2009) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Where plaintiff's claims fail against the officers, they also fail against the municipality. *Id.* As discussed above, plaintiff fails to prove any constitutional injury. Summary judgment is therefore proper on both claims in favor of the Unified Government.

Even if plaintiff proved a constitutional injury, he failed to present evidence attributing the injury to the Unified Government. "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused plaintiff's injury." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). § 1983 liability cannot be imposed on a municipality "unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)) (emphasis in *Brown*). "[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Id.* at 403. A governmental "custom" need not receive official municipal approval to establish § 1983 liability. *Monell*, 436 U.S. at 690.

To prevail on his procedural due process and unreasonable seizure claims against the Unified Government, plaintiff must prove that a policy or custom of the same was the moving force behind actual constitutional violations. Instead, plaintiff argues that the individual defendants failed to comply with Kansas City, Kansas Police Department mission statement by failing to thoroughly investigate the matter before removing the children from his home. (Dkt. 59, at 3-15). Thus, plaintiff argues that the municipality's policies would have ensured compliance with the Fourth Amendment. Accordingly, plaintiff has not proved that the Unified Government's policy or custom caused a constitutional violation.

Summary judgment in favor of defendant Unified Government is proper on all remaining claims.

IT IS ACCORDINGLY ORDERED this 6th day of February, 2015, that defendants' Motion for Summary Judgment (Dkt. 53) on all remaining claims is GRANTED.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE
